520 A.2d 85

Rodolfo Reyes, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 9, 1986, to Judges CRAIG and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Michael Goldberg,* with him, *Patricia Brown,* for petitioner.

*Jonathan Zorach,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE KALISH, January 14, 1987:

Rodolfo Reyes petitions for review of an Unemployment Compensation Board of Review (Board) order affirming a referee's decision which denied him benefits. We affirm.

Beginning in March, 1981, Reyes was employed by Donnelley Printing Co. as an electronic systems operator. When he applied initially for his job, he told his employer that he was allergic to petrochemical solvents and needed to avoid them. In March, 1984, his employer changed his job and required him to work at three different work stations. Reyes complained that two of the three stations affected his allergy. The employer allowed Reyes to work only at the one station which did not affect his allergy, for as long as possible. Reyes' doctor subsequently sent a notice informing the employer of Reyes' condition. The employer then offered Reyes another job (clerk) at a lower pay rate. Reyes refused this job.

The referee found that when Reyes was offered the clerk job, he refused to accept it because it was not suitable to his training, and paid a lower rate of pay. The

referee further found that when Reyes refused the clerk job, he did not discuss his allergy problems with the employer's representative who offered him the job. As to the atmospheric conditions, the referee found that all three of the stations where Reyes worked were in the same plant and had the same atmospheric conditions. However, the referee found that the clerk job was in an area where no solvents were being used. The Board affirmed. Reyes contends that his health problems constituted necessitous and compelling cause to terminate his employment.

To establish health as a compelling reason to quit, the claimant must offer competent testimony that adequate health reasons existed to justify termination, must have informed his employer of the health problems, and must be available where reasonable accommodation is made by the employer for work which is not inimical to his health. *Dornblum v. Unemployment Compensation Board of Review*, 77 Pa. Commonwealth Ct. 547, 466 A.2d 747 (1983). Claimant's failure to meet any one of these conditions will bar a claim for unemployment compensation. *Id.* Moreover, the employer has the burden of offering reasonable accommodations considering the claimant's health problem. *Id.*

Our scope of review is to determine whether there is substantial evidence to support the findings, whether there was an error of law, or whether any constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Here, the employer offered a reasonable accommodation. The referee found that there were no solvents in the area set aside as the work area for the clerk job. In its scope of review, this Court may determine whether a finding is based on legally competent and relevant evidence. The referee's findings are supported by substantial evidence.

Accordingly, we affirm.

ORDER

Now, January 14, 1987, the order of the Unemployment Compensation Board of Review, No. B-237265, dated January 8, 1985, is affirmed.

———

DISSENTING OPINION BY JUDGE BARRY:

Because I believe the factual findings of the referee are insufficient to review the legal conclusion that claimant did not have necessitous and compelling medical reasons to justify his voluntary termination, a remand is necessary. Hence, this dissent.

The referee made the following findings of fact which are germane to the present analysis:

2. Prior to starting work with Donnelley Printing Company, the claimant was aware that he needed to avoid contact with petro-chemical solvents because he had allergic reactions to such solvents.

3. When the claimant applied for work with Donnelley, he made them aware of his allergy problem.

4. In 1981, the claimant noticed that he had some problems whenever he was required to work at some other stations within the plant on occasions when he was not busy in his own department.

5. In March 1984, the claimant discussed his problems with his supervisor after the employer had changed and/or regrouped some of the jobs at which time all persons doing claimant's type of work were asked to work at three different stations.

6. The claimant seemed to feel he was capable of working at one station only and the employer permitted him to work on that one as long as possible.

7. The claimant's doctor had sent a notice to the employer dated April 4, 1984 stating, 'To Whom it May Concern: I previously asked that you see the above captioned patient of mine avoids contact exposure to film cleaners, Naphtha, Xerox solutions, acetone and paint thinners. I have subsequently been made aware of the fact that he develops an allergic reaction to atmospheric exposure to the above agents. I request you, therefore, to permit him to work in atmosphere that is free of the offending agents. Thank you for your consideration. Sincerely yours, Milton S. Good, M.D.'

8. All three stations where claimant was required to work were at the same plant and the same atmospheric conditions existed at all three of such stations.

9. The employer offered the claimant another job as a Clerk V in data entry at $8.28 per hour.

10. The personnel supervisor talked to the claimant on two occasions in regard to the other job, the last occasion being June 28, 1984. The claimant refused to accept the employer's offer of the other job indicating that it was not an appropriate job and was not suitable to his training and background and paid a lower rate of pay.

11. Claimant alleges that he refused the transfer to other work because it was located inside the plant, he would have to go through pressrooms and the job was in a room next to the ink room where there was a high concentration of solvents.

12. The claimant never discussed any of these alleged problems with the employer representative who offered him the job.

13. When claimant filed his application for benefits on August 28, 1984, he notified the Office of Employment Security that he quit for health or other reasons.

14. In a Summary of Interview signed by the claimant on August 28, 1984, the claimant stated he 'left on medical leave of absence due to allergic reaction to solvents used in the area of work' and further indicated that 'unfortunately, the atmosphere in the whole area is contaminated.'

15. At the hearing held before the Referee on October 22, 1984, the claimant alleged that he didn't quit his job and further alleged that he could have continued working at the one station because that one wasn't contaminated.

16. The Clerk V data entry job offered to the claimant was in an area where no solvents were being used.

(Referee's Decision, 10/29/84). Unfortunately, the factual findings are silent as to the crucial question which must be decided, *i.e.*, would acceptance of the Clerk V data entry job have required the claimant to work in an environment where he would have experienced an allergic reaction because of solvent exposure?

The majority essentially relies on three of the factual findings to support its affirmance of the Board's order affirming the decision of the referee, those being (1) that claimant never discussed his health problems with the employer representative when he turned down the lower paying job (finding # 12), (2) that there were no solvents in the new work area (finding # 16) and (3) that all three of the work stations involved in the claimant's original job had the same atmospheric conditions (finding # 8). For the following reasons, I believe such reliance is not well founded.

The referee did find that at the time claimant turned down the lower paying job, he did not mention his health problems to the employer representative who offered the job. I do not believe the claimant was required to do so. As the majority correctly points out, to establish health problems as a compelling reason to justify a voluntary termination, the claimant must (1) offer competent testimony that adequate health reasons existed to justify the voluntary quit, (2) have informed the employer of the health problems and (3) be available to work if reasonable accommodations can be made. *Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 451 A.2d 1353 (1982). However, there is no dispute that the employer was aware of the claimant's health problems, as is evidenced by factual findings # 3 and # 5. I know of no requirement, nor has any been cited, that a claimant once having informed an employer of the health problem, must continuously remind the employer of the same problem.

Similarly, while the Clerk V data entry job may have been located in an area where no solvents were being used, the referee recognized in finding # 11 that this work area was next to the ink room which had a high concentration of solvents. Furthermore, finding # 8 concerning the same atmospheric conditions in all three work stations of the claimant's old job illustrates the problem, in that exposure to solvents is somewhat pervasive throughout the entire plant, and not limited to the area in which the solvents were stored. Despite this finding, the referee also recognized that the claimant did not have an allergic reaction when he was in the first station where he originally worked (findings # 4 and # 6), thereby rendering finding # 9 somewhat inconsistent with these latter two findings.

Claimant, therefore, offered competent evidence concerning his medical problem, both from his own tes-

174

timony and the notice sent by his doctor to the employer. The competency and sufficiency of this evidence has never been questioned. The referee also found that the claimant had made the employer aware of his medical problems. Accordingly, the only reason for denying benefits in this case would be that the claimant refused a reasonable accommodation. Unfortunately, we are unable to review the reasonableness of the accommodation because of the lack of a specific factual finding concerning the level of solvent exposure and the claimant's reaction to it in the proposed new work station.[1] For that reason, I believe a remand is necessary. If there is a remand, I would permit the referee, if he finds it necessary and cannot make necessary findings otherwise, to allow further testimony in fairness to the parties so as to finally resolve this controversy.

---

[1] On page two of its opinion, the majority posits that the law does not require an area absolutely devoid of solvents. In *Lapham v. Unemployment Compensation Board of Review,* 103 Pa. Commonwealth Ct. 144, 519 A.2d 1101 (1987), the court required that an individual with allergies to cigarette smoke be provided with a smoke free atmosphere before benefits could be denied for a voluntary quit for medical reasons.