Bruce K. Judd, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 12, 1985, before Judges MacPhail and Barry, and Senior Judge Barbieri, sitting as a panel of three.

*Steven Robins,* with him, *Dennis Luttenauer,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, with him, *Daniel T. Booth,* Legal Intern, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, August 26, 1985:

Bruce K. Judd appeals here the decision and order of the Unemployment Compensation Board of Review (Board) declaring Mr. Judd, who had resigned his position with the Department of Public Welfare (DPW), ineligible to receive unemployment benefits pursuant to Section 402(b) of the Unemployment Compensation Law.[1]

The facts in this case are not in dispute. Mr. Judd's final position with DPW was as an Income Maintenance Policy Specialist I in DPW's Bureau of Policy in Harrisburg where he worked from July, 1981 until he resigned on September 30, 1982. Prior to his promotion to the position with the Bureau of Policy, Mr. Judd had been employed for twelve years by DPW at the McKean County Board of Assistance where he served finally as a Casework Supervisor I. He applied for the position with the Bureau of Policy in April, 1981 believing that, if he remained with the McKean County Board of Assistance, he would soon be furloughed.

Upon relocating to Harrisburg in July, 1981, Mr. Judd began to experience financial problems due to his inability to sell his home in Bradford and having to pay for housing in Harrisburg. Mr. Judd's net bi-weekly salary in July, 1981 was $649.00; his mortgage

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b).

and rental obligation totaled $780.00. Property taxes on his home in Bradford were approximately $1600.00 per year. By letter dated September 28, 1981, Mr. Judd requested that he be permitted to exercise his ninety-day right-of-return to his former position as Casework Supervisor I with the McKean County Board of Assistance. Simultaneously, however, he received notice of his furlough from that position, and he did not pursue his right to return to McKean County.

Mr. Judd's financial difficulties did not abate though and, on November 30, 1981, after learning of a vacant caseworker position with the McKean County Board of Assistance, he submitted a written request for a voluntary demotion and transfer to that position. He withdrew the request after learning that any transfer would not be effective until near the date his second child's birth was expected; also, his financial situation improved when he was able to lease his Bradford home in December, 1981.

In or around May, 1982, the Judds received notice from the McKean County Tax Claim Bureau that, if payment were not made on their 1981 property taxes, in the amount of $1589.71, their home would be subject to forced sale. Then in June, the Judds' tenants moved and the Judds were unsuccessful in renting the house again. Therefore, Mr. Judd, worried about mortgage arrearages and unpaid property taxes, wrote to the McKean County Board of Assistance and requested that he be permitted to fill an available Income Maintenance Worker Trainee position. Mr. Judd was informed in August, 1982 that the McKean County Board of Assistance would fill the available trainee position from the civil service list.

Mr. Judd, from the outset, had discussed his financial problems, and personal problems which stemmed

from his financial problems, with his supervisors who discussed options available to Mr. Judd, including the possibility of transfer back to McKean County. As his financial situation worsened, Mr. Judd became more and more distraught and finally sought the advice of a physician who made a diagnosis of situational stress due to job dislocation and financial difficulties and prescribed an anti-depressant drug. Though the physician did not recommend Mr. Judd quit his job, he concurred with Mr. Judd's evaluation that terminating his employment thereby gaining access to his retirement contributions would allow him to lessen his financial burdens and ease the extreme stress he was experiencing. While he considered a number of options other than resignation, such as borrowing against his retirement contributions, or taking an unpaid leave of absence, they were rejected as only exacerbating the problem. Therefore, on September 30, 1982, Mr. Judd submitted his letter of resignation, in which he indicated that "my immediate resignation is necessitated by extreme emotional stress and anxiety which I am experiencing due to financial and personal problems, which makes it impossible for me to continue in my present employment with the Bureau of Policy."

After resigning his position with DPW and moving back to Bradford, Mr. Judd applied for unemployment benefits. The Office of Employment Security (OES) denied his claim and the referee to whom Mr. Judd's appeal was referred for hearing affirmed the OES' decision. On appeal the Board concluded that Mr. Judd's emotional stress did not constitute an adequate health reason justifying his decision, corroborated by his physician, to terminate his employment and, while Mr. Judd's financial difficulties may have been severe, they were voluntarily assumed when he accepted the

promotion. Therefore, the Board also denied Mr. Judd unemployment compensation.

Mr. Judd has appealed to this court and, on appeal, he argues that the Board's decision that emotional stress does not constitute an adequate health reason to justify termination is contrary to the controlling authority of this court and our Supreme Court and that, health reasons aside, Mr. Judd's financial difficulties created the economic necessity which has previously provided claimants with necessitous and compelling cause to terminate their employment.

The issue of whether a claimant has terminated his employment for cause of a necessitous and compelling nature is an issue of law subject to our review. *McNeil v. Unemployment Compensation Board of Review,* 51 Pa. Commonwealth Ct. 315, 414 A.2d 727 (1980).

Mr. Judd is correct in pointing out that anxiety and emotional distress can be necessitous and compelling cause for terminating one's employment, *Fetterman v. Unemployment Compensation Board of Review,* 78 Pa. Commonwealth Ct. 233, 467 A.2d 402 (1983).; *Central Data Center v. Unemployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 465, 458 A.2d 335 (1983), and that a claimant does not necessarily have to present expert medical evidence in order to establish that he had compelling medical reasons for terminating his employment, but instead may establish that fact by any competent evidence such as claimant's own testimony and/or documentary evidence, *Steffy v. Unemployment Compensation Board of Review,* 499 Pa. 367, 453 A.2d 591 (1982).

Mr. Judd's emotional distress was established, we believe, by claimant's own testimony and documentary evidence. Unlike the emotional distress suffered by the claimants in *Fetterman* and *Central Data,* how-

ever claimant's distress was not work-related in the sense that claimant's particular job duties caused him emotional distress making it impossible for him to continue to perform those job duties. Claimant's emotional distress was work-related only in the sense that his job duties required his presence in Harrisburg and living in Harrisburg meant that his financial obligations doubled and, as a result, he became extremely distressed. Mr. Judd's health reasons for terminating his employment are inextricably entwined with his economic difficulties. Thus, our analysis of whether Mr. Judd's reasons for terminating employment constitute compelling cause will necessarily include consideration of when economic necessity will constitute compelling cause to terminate one's employment.

Our starting point must be with the *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A.2d 903 (1946). In that case, Judge RENO set out to reconcile the language of the statute which would compensate an individual *voluntarily* unemployed with good cause with purpose of the act to relieve economic insecurity due to *involuntary* unemployment:

'Voluntarily' and 'involuntarily' are antonymous and therefore irreconcilable words, but the words are merely symbols of ideas, and the ideas can be readily reconciled. Willingness, wilfulness, volition, intention reside in 'voluntarily,' but the mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances must be taken into account; and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was

in fact involuntary. A worker's physical and mental condition, his personal and family problems, the authoritative demands of legal duties —these are circumstances that exert pressure upon him and imperiously call for decision and action.

When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it [footnote omitted]. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligation, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment. (Emphasis in original.)

158 Pa. Superior Ct. at 556-57, 45 A.2d at 903.

In *Rettan v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 287, 325 A.2d 646 (1974), we held that a poor financial condition may transform a voluntary termination into involuntary unemployment.[2] In subsequent cases, however, where

---

[2] The claimant in *Rettan*, a sewing machine operator, was told she could not continue working until she obtained a pair of glasses. Rettan could not afford to purchase the glasses; we reversed the Board stating that the Board's determination that claimant's separation was voluntary and, therefore, disqualifying was incorrect as a matter of law.

the claimant has asserted that economic necessity compelled his resignation, we have refused to allow benefits unless the claimant has exhausted every alternative prior to quitting. In *Rose v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 127, 398 A.2d 749 (1979), we affirmed the Board's order denying benefits to a claimant who for financial reasons quit her job after her husband died in order to move to West Virigina where her family lived and where she owned her own home. We affirmed because Rose had not considered the alternative of continuing in her employment and attempting to reduce her living expenses. In *Oberholzer v. Unemployment Compensation Board of Review,* 66 Pa. Commonwealth Ct. 55, 444 A.2d 789 (1982), we affirmed the Board's order denying benefits to Oberholzer who had separated from her husband and for financial reasons moved to a location away from her employment where she owned a house. While Oberholzer argued to this court that she had done what any reasonable and prudent person would have done under the circumstances, we held, citing *Rose,* that benefits should be denied when continuing work is available and the claimant makes no attempt to modify her economic situation and remain in the area where her employment is.

Thus, financial difficulties will seldom present those circumstances set forth in *Sturdevant* which compel the decision to leave employment and transform voluntary unemployment into involuntary unemployment compensable under the law. Only when the claimant has done everything in his power to alleviate the financial burdens which seemingly compel the decision to leave employment will the claimant be eligible to receive compensation, since leaving employment is obviously seldom conducive to bettering one's financial situation.

In the instant case, Mr. Judd, in our view, considered every alternative prior to submitting his resignation. He attempted to exercise his ninety-day right-of-return to his former position with the McKean County Board of Assistance only to be advised that that position had been eliminated. From that point on, Mr. Judd's financial difficulties as the result of his promotion were no longer voluntarily assumed. He aborted a second attempt to return to McKean County to a caseworker position when he was finally able to rent the Bradford home he had been trying to sell. When, six months later, his tenants moved out, he could not sell the home in Bradford even after reducing the selling price to below the amount it had cost to build it, and the taxing authority informed him the house would be subject to forced sale for non-payment of property taxes, Mr. Judd applied for a trainee position at the McKean County Board of Assistance. The trainee position was filled from the civil service list.

We hold that, under these compelling financial circumstances, Mr. Judd's resignation was involuntary for purposes of the Unemployment Compensation Law and he is eligible to receive benefits.

Judge MACPHAIL dissents.

### ORDER

Now, this 26th day of August, 1985, the decision and order of the Unemployment Compensation Board of Review, No. B-222355, dated September 16, 1983, is hereby reversed.