544 A.2d 557

Arthur Palmieri, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs March 21, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

114

*Eileen D. Yacknin,* Neighborhood Legal Services Association, for petitioner.

*Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, July 21, 1988:

Arthur Palmieri (Claimant) appeals an order of the Unemployment Compensation Board of Review (Board) denying him benefits pursuant to Section 402(b) of the Unemployment Compensation Law.[1]

Claimant was employed as an electrician with Allegheny County Housing Authority from July of 1982 until he resigned on January 13, 1986. In 1983, Claimant began experiencing financial difficulties and obtained assistance with making his mortgage payments from Action Housing, Inc.[2] from September of 1983 through

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937), 2897, *as amended,* (Act) 43 P.S. §802(b). Section 402(b) of the Act provides that a claimant is ineligible for benefits for any week in which he is unemployed due to having voluntarily terminated his employment without cause of a necessitous and compelling nature.

[2] Action Housing, Inc. is not identified in the record. However, we note that it is a consumer credit counseling agency which assists homeowners in applying for emergency mortgage assistance through the Pennsylvania Housing Finance Agency as provided in Section 401-C(d) of the Housing Finance Agency Law (Act 91 or Homeowner's Emergency Assistance Act), Act of December 3, 1959, P.L. 1688, *as amended,* added by Section 2 of the Act of December 23, 1983, P.L. 385, *as amended,* 35 P.S. §1680.401C(d). *See,* Appendix C to regulations at 16 Pa. Code §§40.1-40.207.

August of 1984. He then received a letter from Action Housing stating they could recommend where he could apply for further mortgage assistance. Claimant testified he did not follow up on this and fell behind once again in his mortgage payments.

At the time he resigned, Claimant was receiving dunning notices and telephone calls threatening foreclosure on his home due to his default on two mortgages. Further, he received letters threatening to schedule his home for tax sale if he did not pay his 1983 county taxes. He had also received notices threatening to terminate his gas and electric service for non-payment. Claimant testified that in January of 1986, he needed $2,300.00 to pay his bills and $1,500.00 to repay a loan from his sister.

In the beginning of January 1986, Claimant informed his supervisor that he was having financial problems and needed to obtain the money he had accumulated in his pension fund. The supervisor informed Claimant that these funds would not be disbursed to him unless he resigned. Claimant asked whether he could quit his job, obtain the money in his pension fund and then be rehired. After checking to see if this was possible, Claimant's supervisor informed him it was not. Claimant then resigned from his position with the Employer in order to obtain the $3,600.00 in his pension fund.

At the hearing before the referee, Claimant testified that when he accepted the position with the employer in 1982, he was under the mistaken impression that he would be making $17.00 an hour. After receiving his first paycheck, he discovered he was actually making $8.00 an hour. Claimant maintains his net pay was less than what he had been receiving prior to accepting the position in 1982, from unemployment compensation along with some other unidentified weekly benefit. At

the time he resigned his position, Claimant was paid $10.50 an hour.

Claimant's application for benefits was disapproved by the Office of Employment Security (OES) pursuant to Section 402(b) of the Act. The referee affirmed the OES determination and the Board affirmed the referee.

On appeal to this Court, Claimant contends that his resignation was for cause of a necessitous and compelling nature and therefore, the Board erred in denying him benefits.[3] In support of this contention, Claimant argues that he needed access to his pension fund in order to forestall mortgage foreclosure and termination of utility services. Claimant further maintains that his case is controlled by our decision in *Judd v. Unemployment Compensation Board of Review*, 91 Pa. Commonwealth Ct. 372, 496 A.2d 1377 (1985).

Like Mr. Palmieri, the claimant in *Judd*, resigned from his employment in order to access his retirement contributions. Judd submitted medical evidence by way of his own testimony and documentary evidence that his financial problems caused him to suffer "situational stress due to job dislocation and financial difficulties," for which he was treated with anti-depressants. Judd's physician concurred with his decision to resign and obtain his retirement contributions in order to ease the extreme stress he was experiencing.

Although holding that Judd's resignation was involuntary under these circumstances, we noted that he had considered every alternative prior to resigning from

---

[3] Pursuant to Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, our scope of review is limited to determining whether there has been a violation of constitutional rights, an error of law has been committed, or whether the findings of fact are supported by substantial evidence. *Wurster v. Unemployment Compensation Board of Review*, 102 Pa. Commonwealth Ct. 417, 518 A.2d 350 (1986).

his employment. In reaching our decision in that case, we stated that financial difficulties will seldom present good cause for leaving one's employment. "Only when the claimant has done everything in his power to alleviate the financial burdens which seemingly compel the decision to leave employment will the claimant be eligible to recover compensation, since leaving employment is obviously seldom conducive to bettering one's financial situation." *Id*. at 379, 496 A.2d at 1381.

The claimant in *Judd* was forced to resign in order to alleviate emotional stress he was suffering as a result of his financial difficulties. This is not the situation in the present case.

We have held that benefits must be denied where the Claimant's *sole* reason for resigning is to access a retirement fund and ease financial difficulties. *Brown v. Unemployment Compensation Board of Review*, 91 Pa. Commonwealth Ct. 196, 496 A.2d 1303 (1985). The claimant in *Brown* suffered a work-related injury in 1982, for which she received a workmen's compensation award. In light of the fact that this award was only two-thirds of her salary, she began to experience financial hardship.[4] She terminated her employment in order to withdraw her contributions to the employer's retirement fund and pay her debts. In holding that *Brown* had failed to approve necessitous and compelling reasons for her voluntary quit, we noted that she had not shown that she made any effort to lower her living expenses.

In *Rose v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 127, 398 A.2d 749 (1979), the claimant terminated her employment after her husband's death in order to move out of state. In

---

[4] Brown testified that she was behind in her mortgage payments, her utility bills were past due and she faced a major expense in repairing the roof of her house.

that case, we denied benefits concluding that the claimant failed to show that she attempted to reduce her living expenses prior to resigning.

A claimant seeking unemployment compensation benefits bears the burden of proving that his voluntary quit was for necessitous and compelling reasons. *Reid v. Unemployment Compensation Board of Review*, 38 Pa. Commonwealth Ct. 355, 393 A.2d 51 (1978). Although Claimant testified he was deeply in debt, he admitted he did not seek the advice of an attorney concerning the possibility of filing a bankruptcy petition and did not follow up on Action Housing, Inc.'s letter as to where he could apply for additional mortgage assistance. There is no evidence that Claimant explored the possibility of a part-time job to help him pay off his debts, purchasing a less expensive home, or otherwise reducing his living expenses.

The only action Claimant took prior to quitting his job was to ask his supervisor if he could quit, obtain the money in his pension fund and be re-hired. When informed that this was not possible, Claimant quit his job. Upon losing his sole source of income, Claimant sought unemployment compensation benefits.

The fact that when hired in 1982, Claimant may have been under the mistaken impression that his salary was to be more than it actually was is clearly irrelevant. Claimant admitted he was aware of his actual salary upon receiving his first paycheck but continued working for the Employer for more than three years. A claimant's initial acceptance of employment raises a presumption as to its suitability and the claimant must show deception as to the conditions or substantial unilateral change in the employment agreement in order to justify a voluntary quit. *Fontana v. Unemployment Compensation Board of Review*, 71 Pa. Commonwealth Ct. 274, 454 A.2d 678 (1983). Claimant has not done so.

Claimant did not show that he did everything in his power to alleviate the financial burdens he was facing nor did he present any evidence that these problems were causing him to suffer emotional stress necessitating his voluntary quit, as was the case in *Judd*. We therefore conclude his voluntary quit was not for good cause. Accordingly, we will affirm the Board's order.

ORDER

AND NOW, this 21st day of July, 1988, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.