547 A.2d 470

Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institution at Graterford, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs May 18, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*David L. Horwitz*, Assistant Counsel, for petitioner.

*Peter C. Layman*, Deputy Chief Counsel, with him, *Clifford F. Blaze*, Deputy Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, September 7, 1988:

The Pennsylvania Department of Corrections, State Correctional Institution at Graterford (Employer) appeals from a decision of the Unemployment Compensation Board of Review (Board) affirming a referee's grant of unemployment compensation benefits to Richard T. Wills (Claimant) based on the conclusion he had cause of a necessitous and compelling nature for voluntarily terminating his employment. Section 402(b)(1) of the Pennsylvania Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1).

The referee made the following findings of fact:

1. The claimant was last employed by Pennsylvania Department of Corrections for nine years and three months, his final job assignment having been as a Correction Officer III (Sergeant) at a final rate of pay of $12.48 per hour. His last day of work was August 17, 1986.

2. The claimant was employed as a Correctional Officer at the State Correctional Institution in Graterford, Pennsylvania.

3. Effective August 17, 1986, the claimant requested and was granted a leave of absence due to medical reasons after he had been repeatedly threatened with physical harm by his shift commander, a superior officer.

4. The claimant was on a leave of absence with pay until November 23, 1986 at which time he was placed on a leave without pay after exhausting all of his accumulated leave.

5. The claimant sought a transfer to employment at another State Correctional Institution but his request for a transfer was denied.

6. On October 10, 1986, the employer offered the claimant an alternate work shift or an alternate post at the Graterford Correctional Institution in an attempt to alleviate the problem the claimant had with his shift commander.

7. The claimant was unable to accept that offer because he fears for his personal safety if he works in any position on any shift at the Graterford Correctional Institution as a result of the physical threats made by a superior officer who remains employed at that institution.

8. The claimant has presented medical certification substantiating his medical contentions.

9. The claimant's doctor had advised him to leave his employment.

10. Claimant was able and available for suitable employment during the period involved in this appeal.

Based on the above findings of fact, the referee awarded benefits, concluding that Claimant had cause of a necessitous and compelling nature for voluntarily leaving his employment. Section 402(b)(1) of the Act. The Board summarily affirmed; Employer has appealed to this court.

Employer raises four issues for our review: 1) whether the referee erred in finding that Claimant's unemployment began on August 17, 1986; 2) whether there is substantial evidence to support the referee's finding that Claimant proved he had medical reasons for leaving; 3) whether there is substantial evidence that Claimant took reasonable steps to preserve his employment; and 4) whether the referee erred in concluding that Claimant had established cause of a necessitous and compel-

ling nature. For the reasons which follow, we reverse the Board's award of benefits.[1]

Employer first argues that Claimant did not become unemployed on August 17, 1986, the last day Claimant worked. Employer asserts that November 23, 1986 is the operative date because it was on that date that Claimant changed from absent with pay to absent without pay. In fact, however, the Act's definition of unemployed indicates the referee correctly found August 17, 1986 as the operative date. Section 4(u) of the Act provides, in pertinent part:

> (u)  'Unemployed.'
>
> An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him
> . . .

77 P.S. §753(u). In the weeks following August 17, 1986, Claimant performed no services for Employer; accordingly, after August 17, 1986, although Claimant received remuneration, it was not for services performed. In *Pennsylvania Electric Co. v. Unemployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 258, 458 A.2d 626 (1983), we held, under almost identical facts, that the amounts received were for accumulated past and not present service. Furthermore, as we noted in that case, remuneration is defined as payment for services performed. *Id.* (quoting *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 555, 153 A.2d 906, 911 (1959)).

---

[1] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether constitutional rights have been violated, or whether an error of law was committed. *Emery Worldwide v. Unemployment Compensation Board of Review,* 115 Pa. Commonwealth Ct. 554, 540 A.2d 988 (1988).

Employer's remaining arguments focus on sufficiency of the evidence. In a voluntary quit case, the claimant bears the burden of proving he terminated employment for cause of a necessitous and compelling nature. *Ryan v. Unemployment Compensation Board of Review*, 87 Pa. Commonwealth Ct. 465, 487 A.2d 1026 (1985). Whether a claimant had cause of a necessitous and compelling nature is a question of law subject to our review. *Rolland v. Unemployment Compensation Board of Review*, 98 Pa. Commonwealth Ct. 163, 510 A.2d 408 (1986). Review of the record demonstrates that Claimant has not met his burden of proof because he has not established cause of a necessitous and compelling nature.

Claimant alleged he left his employment for mental health reasons, although the hearing transcript indicates Claimant's primary concern was his personal safety.[2] Either reason can constitute cause of a necessitous and compelling nature. *Hoy v. Unemploymemt Compensation Board of Review*, 38 Pa. Commonwealth Ct. 126, 391 A.2d 1144 (1978) (employees of convenience store had cause of a necessitous and compelling nature where owner demanded they keep store open when numerous burglaries and two killings had occurred at such stores

---

[2] Claimant testified as follows:

GCL: Mr. Wills would you explain to the Referee why you took voluntary leave after August 17, 1986?

AC: Well I took voluntary leave because of one Captain, Captain Clark, Captain James Clark (PHONETICALLY SPELLED), the man on several instances had threatened me physically in the jail, and I knew it would not be, I know that what his purpose was well I don't know it, I assume what his purpose was was to fire me. He wanted me to challenge him and I wouldn't do it. I attempted to settle it through stop talking to the man.

N.T. at 3.

in the area); *Judd v. Unemployment Compensation Board of Review*, 91 Pa. Commonwealth Ct. 372, 496 A.2d 1377 (1985) (anxiety and emotional distress can constitute cause of a necessitous and compelling nature). We shall first address whether Claimant established cause of necessitous and compelling nature based on fear for his personal safety. The record demonstrates that on at least four occasions Claimant's supervisor, Captain Clark, urged Claimant to initiate physical battle with Clark.[3] Claimant's testimony on this point was corroborated by Employer's witness, Lieutenant Lucas, as follows:

QR: ANd [sic] how do they feel about each other?

AEW1: Well there was no love lost on either side.

QR: On either side? Okay, during that meeting, did you hear Captain Clark threaten Mr. Wills?

AEW1: Threaten no, let, if I may, just let me put in the proper context.

QR: Go ahead.

AEW1: Captain Clark indicated that if at any point Sergeant Wills wanted a piece of him or wanted to do something to him or whatever, at that point he could just simply name the time and place.

N.T. at 12. The record discloses no reason for the animosity between Claimant and Captain Clark.

---

[3] QCL: Okay, what were the threats that Captain Clark made against you?

AC: Captain Clark told me, he said 'all you have to do is pick the time and the date and I'm gonna beat your ass, I'm gonna beat it bad, all you have to do is pick the time and the place.'

N.T. at 3.

We have no doubt that Captain Clark's animosity toward Claimant made Claimant's working conditions unpleasant, and we certainly do not condone Captain Clark's unprofessional conduct. Nonetheless, the totality of the record demonstrates that Claimant has not met his burden. In order to establish cause of a necessitous and compelling nature, a claimant must show that the circumstances "produce pressure to terminate the employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Malloy v. Unemployment Compensation Board of Review*, 105 Pa. Commonwealth Ct. 183, 187, 523 A.2d 834, 836 (1987). Furthermore, the Claimant must establish that he acted with ordinary common sense in quitting his job, that he made a reasonable effort to preserve his employment and that he had no real choice other than to leave his employment. *Id*.

The fatal flaw in Claimant's case is his refusal to accept a transfer to another shift or post. *See Mackanic v. Unemployment Compensation Board of Review*, 37 Pa. Commonwealth Ct. 347, 390 A.2d 884 (1978). In a letter to Claimant dated October 10, 1986, Superintendent Charles H. Zimmerman wrote:

> After a thorough investigation of your allegations that your person would be endanger [sic] if you continue your employment at S.C.I. Graterford, I have found no substantiation of these charges. I feel that your continued employment at S.C.I. Graterford can continue without threat from any of your supervisors or any other personnel.
>
> . . .
>
> I am willing to allow you alternative shifts and alternative posts in order that you may come back to work.

Claimant refused the transfer to another shift or post and testified as follows:

QEW2: You refused it, why?

AC: Because I would be within that institution and Captain Clark is still employed within that institution and is still a Captain.

. . .

AC: Well according to Administrative things, I mean he can't just, he can't just write me up and fire me himself. But in other words there are, there are things that are done there, in other words if you, you don't have to make a mistake, all I'm saying is if they want you they will get you. They can stop you. I don't believe I'd have a prayer of ever making Lieutenant, and I'm certain that the job as Sergeant would not last very long, I don't think my job would last very long. Because when it comes to a set up I can't, I can't really break it down, but I know they do it. And I know if they want you, well, I'll give you an example.

QR: Now wait a minute sir, before you go on, I mean you're making all kinds of allegations that, that I don't really think are proper. Alright can you just answer your Counsel's question, what do you mean by a set up, just define that for us if you will please?

AC: Well the word set up is obvious, in other words you don't do anything wrong but you get shot down for it anyway.

N.T. at 10-11.[4] Claimant's testimony does not establish that his refusal of the shift change was reasonable under the circumstances. A claimant's vague suggestions of a "set-up" and fear of losing his job do not rise to cause of

_____

[4] See also N.T. at 4, where Claimant stated, in response to questioning regarding his refusal of the shift change: "The man is a Senior Captain within the Institution and if he wants you set up and get, and he wants to get rid of you, he will get rid of you. He has alot [sic] of friends, too."

a necessitous and compelling nature, especially when a claimant's reason for terminating employment is fear for his safety. Employer's offer of an alternative shift or alternative post demonstrates that Claimant did have a real choice other than to leave his employment. *Malloy*.[5]

Claimant also asserts medical reasons for terminating his employment. A claimant asserting health reasons for terminating employment is required to inform an employer of his health problems. *St. John v. Unemployment Compensation Board of Review*, 108 Pa. Commonwealth Ct. 560, 529 A.2d 1218 (1987). If the employer then offers the claimant a reasonable accommodation, the claimant must avail himself of the opportunity; if the claimant declines, then a finding of ineligibility is appropriate. *Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 451 A.2d 1353 (1982).

Thus, the question before us is whether, under the present circumstances, Employer offered Claimant a reasonable accommodation, *i.e.*, suitable work. As the

---

[5] *Compare Hoy* (owner's accommodation, offering to provide private security guard, not sufficient to overcome employees' reasonable fear for their safety) *and Howell v. Unemployment Compensation Board of Review*, 93 Pa. Commonwealth Ct. 496, 501 A.2d 718 (1985) (employer's discharge of employee who had struck the claimant was insufficient accommodation where the discharged employee gained access to employer's premises and again struck the claimant) *with Mackanic* (union workers told non-union claimant to reduce his production level or he and his family would be "dealt with"; claimant's refusal of offered transfer not prudent and reasonable) *and Iaconelli v. Unemployment Compensation Board of Review*, 55 Pa. Commonwealth Ct. 117, 423 A.2d 754 (1980) (co-worker verbally and physically harassed claimant, and threatened to wait for claimant in parking lot; claimant demanded immediate transfer, which was denied. Claimant did not act reasonably and prudently in immediately resigning where employer testified that had high level management been aware of the problem, emergency procedures could have been instituted allowing claimant to transfer without going through formal bidding procedure).

letter from Superintendent Zimmerman makes clear, Claimant was offered alternative shifts and alternative posts, not under the supervision of Captain Clark, in order to resolve any problem.[6] We are unable to dis-

---

[6] Our discussion of Claimant's health problems is, of necessity, vague. Claimant testified that the incidents with Captain Clark led him to seek medical attention and the advice of a psychiatrist. However, it is not clear what health problem existed. Claimant testified as follows:

QCL: I see, and why did you see these two doctors?

AC: Because I wanted to know, well first of all it is a necessity if possible I was wrong, and there was a cure for this thing or something, then I will, in other words for the benefit of the institution and me, is the reason I left. Now I had to go to a psychiatrist about it to just find out what could be done to help the situation.

QCL: Why did you feel you needed to go to a psychiatrist?

AC: Well to see what, to see what basically my problem was if it was my problem.

QCL: What type of problem were you having?

AC: Well the fact that I knew that I was certain and I always will be that I would lose my job, and that I was in physical danger because of Captain Clark.

QCL: You were afraid?

AC: Yes.

QCL: Okay, and did [the psychiatrist] then advise you to leave work?

AC: Yes he did.

N.T. at 6.

On cross-examination, the following colloquy took place:

QEW2: Number one, can you clarify, you stated that you had gone to see the doctor, the psychiatrist?

AC: Yes.

QEW2: Okay and you wanted to see if there was a cure for this thing?

AC: Yes.

QEW2: What do you mean exactly by this thing?

AC: Well in other words, chiefly the reason a person goes to a psychiatrist is he needs help about a situation with the mind. Now that is why I went to the psychiatrist,

cern any health reason making alternative work unsuitable. Claimant's reasons for refusing the alternative work are the same as his reasons for quitting: fear, N.T. at 8, his belief he was going to lose his job, N.T. at 4, and his belief that Captain Clark would still have the power to create a "set-up," N.T. at 4, 10. In fact, Claimant stated that he did not believe he would be safe working at any other institution within the Department of Corrections because of Captain Clark's status as an administrator. N.T. at 6.[7]

---

and he determined that it was actually something that was, that I was wrongfully a little scared about. I was concerned about my job, and my physical being, and that's, in the case of something like this it is a natural thing to be that way, that's basically what I mean by help.

Claimant also submitted a physician's certification from his psychiatrist, dated August 22, 1986, which stated that the nature of the Claimant's disability, illness or injury is "1) Adjustment Disorder with Mixed Emotional Features and 2) Organic Personality Syndrome." For purposes of this opinion, we accept the referee's finding that Claimant substantiated his medical contentions. We note, however, that the combination of vague statements from a claimant and unexplained statements from a physician rarely support a conclusion that a party has met his burden of proof. *See, e.g. Central Data Center v. Unemployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 465, 458 A.2d 335 (1983) (claimant had been hospitalized for 5½ months for emotional problems, was attending counseling sessions and taking medication, and terminated employment when she began experiencing renewed symptoms of emotional difficulties; claimant's testimony, in conjunction with her psychiatrist's certification, was sufficient to prove cause of a necessitous and compelling nature) and *Fetterman v. Unemployment Compensation Board of Review,* 78 Pa. Commonwealth Ct. 233, 467 A.2d 402 (1983) (claimant was under a doctor's care for hypertension, headaches, palpitations, diarrhea and peptic ulcer symptoms, and was taking medication; claimant's testimony, in conjunction with his doctor's statement, was sufficient to prove cause of a necessitous and compelling nature).

[7] Claimant explained his belief as follows: "Well as I said Captain Clark is an Administrator. He is a Captain and those people's power goes everywhere. He is an Administrator. And I wills [sic] say if they want you they'll get you." N.T. at 7.

Finally, we note the referee's finding that Claimant requested a transfer to another state correctional institution. Claimant did request two such transfers. However, both requests were made *before* Claimant's problems with Captain Clark began. N.T. at 4-5. Accordingly, that finding does not support a conclusion that Claimant made reasonable attempts to preserve his employment. Also, as noted above, Claimant testified that he did not believe he could work in any other institution because of Captain Clark's power as an administrator.

Based on the foregoing, it was error for the Board to conclude that Claimant had cause of a necessitous and compelling nature for terminating his employment. Accordingly, the order of the Board is reversed.

ORDER

AND NOW, September 7, 1988, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.