John Iaconelli, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 6, 1980, before Judges MENCER, ROGERS and PALLADINO, sitting as a panel of three.

*Terry L. Fromson,* for petitioner.

*Stephen B. Lipson,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, December 4, 1980:

Petitioner (claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) reversing a referee's grant of benefits. The Board found that claimant voluntarily terminated his employment without a cause of a necessitous and compelling nature and was therefore ineligible for benefits

under Section 402(b)(1) of the Unemployment Compensation Law (act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802 (b)(1). We affirm.

Claimant was last employed by Lee Tire and Rubber Company as a reliner from August 24, 1974 to March 16, 1979. On the latter date claimant voluntarily signed a resignation slip and effectively terminated his employment in order to allegedly avoid a confrontation with a hostile co-worker and a continuing threat to his physical well-being. Specifically, the claimant stated that he left work after a fellow co-worker verbally and physically harassed him and threatened to wait for him in the parking lot after work. Claimant further alleged that he felt his life had been threatened and that he received no assistance from the shift supervisor who was present during the entire incident. After the incident claimant proceeded directly to the supervisors' office where his request for an immediate transfer to another department was denied. As a result of the denial claimant elected to terminate employment rather than return to work in the same department.

At the subsequent hearing before the referee, claimant testified that although there had been "quite a number" of threatening confrontations with the same co-worker, he had not reported the problem to management despite his awareness of company policy which dictates that any such incidents be reported immediately. Claimant also testified that he signed his resignation "in a fit of anger," that he was aware of the job bidding procedure used by his employer, and that he could have "bid off" his job in August 1978 but refrained from doing so because he did not consider his problem with the other employee serious at that time.

Where voluntary termination is relied on the claimant has the burden of proving that his quitting was for

cause of a necessitous and compelling nature. *Sabella v. Unemployment Compensation Board of Review,* 52 Pa. Commonwealth Ct. 258, 415 A.2d 722 (1980). Specifically, the termination must be precipitated by job pressures which are "both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Id.* at , 415 A.2d at 723. Since the claimant here did not prevail below, review by this Court is limited to a determination of whether there has been a capricious disregard of competent evidence or inconsistencies in the findings of the Board. *Bowman v. Unemployment Compensation Board of Review,* 49 Pa. Commonwealth Ct. 170, 410 A.2d 422 (1980).

It is the claimant's sole contention that his leaving was necessitated by the threats and hostile conduct of a co-worker. Claimant relies upon *Artley v. Unemployment Compensation Board of Review,* (No. 2005 C.D. 1976, filed March 22, 1978). In that case multiple threats against the life of a co-worker were found to constitute necessitous and compelling cause for a voluntary termination of employment. While we adhere to our holding in *Artley, id.,* claimant's reliance on that case is misplaced. In *Artley,* the co-worker who made the threats had previously been institutionalized for mental disorders, and several other employees had quit because of his violent tendencies. More importantly, the claimant in *Artley* acted in a reasonable and prudent manner before terminating his employment. He testified that he had informed his employer of the threats and harassment from the beginning and that he voluntarily terminated only after management took no steps to remedy the situation.

Even though it is well supported in the record that the claimant here was threatened, it is our view that he failed to act as a reasonable employee and did not put forth an adequate effort to maintain his employ-

ment before voluntarily terminating. Thus, the Board did not capriciously disregard competent evidence in its reversal of the referee's award of benefits.

In a case strikingly similar to the one at bar, Judge CRUMLISH in writing for the Court stressed that in addition to an examination of the pressures causing the termination, the Court must examine the claimant's behavior to determine if he acted reasonably and prudently under all the circumstances. *Mackanic v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 347, 390 A.2d 884 (1978). The Court in *Mackanic, id.,* denied benefits because the claimant acted unreasonably in terminating his employment before thoroughly pursuing the possibility of a transfer to a different department in the plant.

It is also well established that prior to terminating employment the claimant must establish that he has made a reasonable effort to advise the employer of the problem or has otherwise made a reasonable effort to preserve his employment. *Colduvell v. Unemployment Compensation Board of Review,* 48 Pa. Commonwealth Ct. 185, 408 A.2d 1207 (1979); *Kovarik v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 165, 387 A.2d 521 (1978).

Claimant's own testimony before the referee conclusively supports the Board's findings that:

2. Claimant walked off his job on March 16, 1979 due to verbal harassment from one of his co-workers which nearly resulted in a physical confrontation; the co-worker had threatened to meet him outside in the parking lot that evening.

3. Claimant had worked with the co-worker for approximately five years.

4. Claimant has had previous harassment encounters with the co-worker.

5. *Claimant never reported any previous threats made by this co-worker before the last incident.*

6. At the time of this last incident, claimant left his work station and proceeded immediately to the shift supervisor's office.

7. Claimant asked to be given a transfer or alternatively he would sign a resignation letter.

8. *The shift supervisor tried to calm the claimant and advised him not to sign the resignation form.*

9. Claimant was told that at that time he could not grant the transfer.

10. *The employer did have a job-bidding policy and claimant had full knowledge of this procedure.*

11. Claimant voluntarily terminated his employment on March 16, 1979 following the verbal harassment with his co-worker.

12. Continuing work was available had claimant desired to remain employed. (Emphasis added.)

Although the Board's findings support claimant's allegations concerning threatening conduct by a co-worker, the findings and the entire record also lead us to the conclusion that the claimant did not act in a reasonable and prudent manner in order to preserve his employment. *Mackanic, supra; Colduvell, supra.*

The record is replete with claimant's admissions that he signed his resignation in "a fit of rage", was aware of proper bidding procedures, and never informed his employer of the ongoing harassment by a co-worker. A representative of the employer also testified that had the company's high level management been aware of the problem, certain "emergency pro-

cedures'"[1] could have been put into effect making it possible for claimant to be transferred without going through the formal bidding procedure. Claimant admitted having knowledge of the emergency transfer procedures, but expressed a reluctance to make use of them since a transfer to another department would have deprived him of his five years seniority.

Accordingly, we affirm the order of the Board denying claimant benefits.

ORDER

AND Now, December 4, 1980, the order of the Unemployment Compensation Board of Review, Decision No. B-176202, dated September 27, 1979, denying benefits to John Iaconelli is affirmed.

---

[1] Mr. Kurek, the employment manager at Lee Tire & Rubber Company, testified that the claimant should have spoken to his department foreman before signing a resignation. If an emergency situation indeed existed, the department foreman "would have gone to the personnel manager, they would have handled it."