519 A.2d 1101

Lorraine Lapham, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 11, 1986, to Judges DOYLE and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Robert Senville*, for petitioner.

*James K. Bradley*, Associate Counsel, with him, *Paul E. Baker*, Acting Deputy Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE KALISH, January 13, 1987:

Lorraine Lapham (claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) which reversed a referee's decision granting her employment compensation benefits. We reverse the Board.

The claimant was employed as a program monitor by the Berks County Employment and Training Office. She suffered from allergic bronchitis due to exposure to cigarette smoke in the work area. She resigned her position and was denied unemployment compensation benefits by the Board because she failed to meet the burden of showing a necessitous and compelling cause for her termination.

The question raised in this appeal is whether the claimant left her employment under circumstances which would render her ineligible for unemployment compensation benefits under section 402(b)(1) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1). That section provides in pertinent part:

An employee shall be ineligible for compensation for any week—

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .

Provided, That a voluntary leaving work because of a disability if the employer is able to provide other suitable work, shall be deemed not a cause of necessitous and compelling nature. . . .

This has been interpreted to mean that when terminating employment for health reasons, the claimant must show that she explained to her employer her medical condition and her inability to perform regularly assigned duties, and submitted medical evidence of her condition. She need do no more. This then shifts the burden to the employer to offer a suitable alternative in the form of a reasonable accommodation for work which is not inimical to her health. Since the employee must show a good faith effort to maintain the employment relationship, if such an opportunity was proffered to the claimant and she declined to avail herself of it, a finding of ineligibility under section 402(b)(1) of the Law would be appropriate. *Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982); *Dornblum v. Unemployment Compensation Board of Review,* 77 Pa. Commonwealth Ct. 547, 466 A.2d 747 (1983).

The issue then becomes whether a reasonable accommodation not inimical to the health of the claimant was offered to her. The employer did not meet its burden.

The Board found that claimant had a medical problem, and that cigarette smoke in the work area created an adverse effect on claimant's health. They found that the claimant was advised by her physician to seek work where she would not be exposed to cigarette smoke, and that her employer was aware of this problem.

The Board further found that the employer did offer to relocate the claimant within the office to an area

which was relatively free of smoking employees; however, claimant declined because it had been her experience that smoke from other areas would still infiltrate the work area despite the absence of smoking employees in the immediate vicinity.

An employer is under a duty to provide a work area that is free from unsafe conditions.[1]

The evidence of the toxic nature of tobacco smoke and its injurious and deleterious effects on health is very strong, not only to the smokers, but also to the nonsmokers who are exposed to "secondhand" smoke.

In *Shimp v. New Jersey Bell Telephone Company*, 145 N.J. Super. 516, 368 A.2d 408 (1976), the court took judicial notice of the toxic nature of cigarette smoke and its well known association with emphysema, lung cancer and heart disease, citing the Federal Cigarette Labeling and Advertising Act, P. L. 89-92, July 27, 1965, 79 Stat. 282, and the Surgeon General's report of 1972 entitled *The Health Consequences of Smoking*. Both recognized the dangerous nature of cigarette smoke and declared it a national policy to warn the public of its danger. The Surgeon General discouraged cigarette smoking. His reports indicate that the mere presence of cigarette smoke is an air pollutant and makes involuntary smokers of all who breathe the air. It is especially harmful to the health of those who have chronic heart conditions, pulmonary problems, and allergies to tobacco smoke.

There is no medical evidence in the record that the proffered relocation would not be harmful to the claimant's health.

---

[1] 43 P.S. §25-2 provides that all establishments (any room or place where persons are employed for compensation) shall be so constructed as to provide adequate protections for the health and safety of persons working there.

On the other hand, the claimant's physician did advise her to seek work where she would not be exposed to cigarette smoke, and testified concerning the effect on her health of exposure to even small concentrations of cigarette smoke.

The record shows that claimant was situated in her relocated area ten to fifteen feet away from a heavy smoker whose desk was in front of her, twenty feet from a second smoker, and on the side of the office in which four out of six employees smoked. The inference that there was a reasonable accommodation is therefore not a logical one in light of this record.

Accordingly, we reverse the Board's order and uphold the referee's decision which grants claimant's benefits.

### ORDER

Now, January 13, 1987, the order of the Unemployment Compensation Board of Review, No. B-238302, dated February 26, 1985, is reversed.