606 A.2d 1300

QUINN, GENT, BUSECK AND LEEMHUIS, INC.,
a Pennsylvania corporation, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 1991.
Decided April 8, 1992.

Frank L. Kroto, Jr., for petitioner.

John Herzog, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

SMITH, Judge.

The question presented in this case is whether an employer's total ban on smoking within the workplace constitutes cause of a necessitous and compelling nature to voluntarily terminate employment, thereby qualifying an employee for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937), 2897, *as*

*amended,* 43 P.S. § 802(b).[1] The Unemployment Compensation Board of Review (Board) entered its decision on January 24, 1990 affirming the referee's decision to grant benefits to Margaret L. Sinclair (Claimant).[2]

## I

Claimant was employed by the law firm of Quinn, Gent, Buseck and Leemhuis, Inc. (Employer) as a paralegal for approximately five years, and her last day of work was August 22, 1989. The referee found that Claimant, age 65, had been an habitual smoker throughout her adult life and that on her last day of work she confirmed a rumor that Employer would not permit smoking within the new building where the firm was to relocate its offices effective August 28, 1989. Employees would be permitted, however, to smoke on Employer's premises outside of the building. Claimant resigned immediately upon confirmation of the smoking ban.

On September 10, 1989, Claimant filed for unemployment compensation benefits which were denied by the Bureau of Employment Compensation Benefits and Allowances (Bureau) on the basis of Section 402(b) of the Law. In her summary of interview before the Bureau, Claimant stated that her voluntary separation was due to Employer's new smoking policy and that had she known of the policy earlier, she would have given notice and resigned. On appeal to the referee, Claimant stated that Employer's new smoking policy was "discriminatory" and that all she requested was a designated area. The referee reversed the Bureau's denial of benefits, and on further appeal by Employer, the Board

1. Section 402(b) of the Law provides that an employee is ineligible for benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in 'employment' as defined in this act...."

2. This Court's scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

affirmed the referee and allowed benefits under Section 402(b). In its decision, the Board acknowledged a decline in the social and cultural acceptability of smoking and that more and more employers are placing restrictions on employees' rights to smoke. The Board concluded, however, that since Employer totally banned smoking on its premises and failed to make reasonable accommodations *within* the building for smoking employees, the smoking ban constituted a substantial unilateral change in working conditions which presented Claimant with cause of a necessitous and compelling nature to terminate her employment.

## II

 Employer contends that the Board erred in affirming the referee who ruled on an issue not raised by Claimant in her appeal. Employer asserts that Claimant never mentioned that the ability to smoke within the workplace was a term and condition of her employment, and consequently, Claimant is bound by the discrimination theory upon which she originally submitted her claim, citing *Solomon v. Presbyterian University Hospital*, 365 Pa.Superior Ct. 447, 530 A.2d 95 (1987), *appeal denied*, 517 Pa. 618, 538 A.2d 500 (1988). The Board, to the contrary, argues that Claimant sustained her burden of proof and that the record as a whole contains substantial evidence to prove that Claimant's ability to smoke was a term and condition of her employment at the time of hire.

 In ruling under Section 402(b) of the Law, it is clear that the burden of proof rests upon the claimant. In such case, the claimant must prove that a voluntary termination was for cause of a necessitous and compelling nature. *Chamoun v. Unemployment Compensation Board of Review*, 116 Pa.Commonwealth Ct. 499, 542 A.2d 207 (1988); *Kligge v. Unemployment Compensation Board of Review*, 89 Pa.Commonwealth Ct. 30, 491 A.2d 325 (1985). To meet that burden, a claimant must show that cause of a necessitous and compelling nature results from circumstances which produce pressure, both real and substantial,

to terminate one's employment and which would compel a reasonable person under the circumstances to act in the same manner. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977); *Uniontown Newspapers, Inc. v. Unemployment Compensation Board of Review*, 126 Pa.Commonwealth Ct. 102, 558 A.2d 627 (1989); *Iaconelli v. Unemployment Compensation Board of Review*, 55 Pa.Commonwealth Ct. 117, 423 A.2d 754 (1980). Whether an employee had cause of a necessitous and compelling nature is a legal conclusion drawn from a review of the findings of fact and is one subject to appellate review. *Taylor*. Further, this Court must also evaluate Claimant's behavior to decide whether she acted reasonably under the circumstances. *Iaconelli*.

The record fails to demonstrate any substantial evidence to satisfy Claimant's burden of proof. Conceding that the smoking ban produced neither real nor substantial pressure to terminate her employment, Claimant's testimony on this issue is instructive.

QR: Why is a smoking band [sic] cause for you to leave your job?

AC: Because at my age, I sure as hell am not going to go outside and smoke in the winter time in Erie.... Whether I smoked at my desk or not, it was irrelevant, because I would of, you know, smoked on my breaks or I can go outside and do it.

 ....

QEL: In response ... in response to his [Employer's witness] confirming that there was no smoking permitted in the new building, did you render your resignation orally immediately?

AC: Yes, I did. I said, 'and I quit.' And he said, 'when do you want it effective?' And I said, 'right now.'

 ....

QR: Any other questions, Ms. Sinclair?

AC: And I think it would be terrific if some of these heavy smokers would get behind some of the rest of us and help us in this thing. You know, wherever you go,

*there is discrimination now against smokers.* This band [sic] on airlines and all this and it's getting to the point where it's disgusting. *And at my age, it isn't that I couldn't quit, it's that I just absolutely refuse to. Why should I?* (Emphasis added.)

N.T., pp. 3–4, 9. This Court cannot conclude from the testimony that Claimant suffered any pressure whatsoever to terminate her employment; nor is there evidence that a reasonable person would be compelled to act similarly under the circumstances. In fact, unrefuted testimony indicated that Claimant was the only employee in the firm who quit because of the new smoking policy.[3] Claimant admittedly could have quit smoking, accepted accommodations offered to the employees to smoke outside on Employer's premises, or remained on the job and attempted to seek alternatives to the policy. She chose to pursue none of these options.

The law is quite clear that an employee is obligated to take all reasonable and necessary steps to preserve his or her employment and that failing to do so, a claim for unemployment compensation benefits upon voluntary termination of that employment must be rejected. *Chamoun; Evasovich v. Unemployment Compensation Board of Review*, 80 Pa.Commonwealth Ct. 395, 471 A.2d 921 (1984). Also, an employee may not voluntarily terminate employment merely because of disagreement with an employer's policy or dissatisfaction with working conditions. *Monaco v. Unemployment Compensation Board of Review*, 523 Pa. 41, 565 A.2d 127 (1989); *Sofis v. Unemployment Compensation Board of Review*, 68 Pa.Commonwealth Ct. 366, 449 A.2d 110 (1982).

An examination of the testimony in this case shows a mere dissatisfaction with Employer's new smoking ban and

---

3. Employer testified that there were twenty to twenty-five smokers in the office which included attorneys and staff. Thus, taken to its logical conclusion, the Board's position would permit all smokers on Employer's staff who voluntarily quit because of the new smoking policy to collect unemployment compensation benefits by simply asserting that when hired, Employer stated that smoking on the job was permitted.

an attempt by Claimant to elevate the cause of smokers within the workplace and to advocate on their behalf.[4] Thus, cause of a necessitous and compelling nature to terminate her employment cannot be substantiated on this record.

 It is axiomatic that Claimant is bound by the theory upon which she presents her claim for benefits, and since neither her appeal nor testimony at hearing claimed that the ability to smoke was a term and condition of her employment, the Board further erred in affirming the referee on this theory. *See Solomon; Manzulich v. Unemployment Compensation Board of Review,* 32 Pa.Commonwealth Ct. 56, 377 A.2d 1066 (1977) (claimant limited to reason given in the initial application for benefits as cause for voluntary termination). Nevertheless, a clear reading of the record demonstrates that the testimony is insufficient to show that the ability to smoke was a term and condition of Claimant's employment. In *National Freight, Inc. v. Unemployment Compensation Board of Review,* 34 Pa.Commonwealth Ct. 161, 382 A.2d 1288 (1978), this Court stated that an employee may terminate employment and remain eligible for benefits where wages and working conditions have changed since the initial employment or an employee was originally deceived as to the complained-of

4. Significantly, the legislature of this Commonwealth has declared by its enactment of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963, that only certain classes of individuals shall be protected from discrimination in employment. Those protected classes include persons or groups of persons discriminated against by reason of "race, color, religious creed, ancestry, handicap or disability, ... age, sex, or national origin." 43 P.S. § 952. Nothing within the language or intent of this legislation encompasses protection for an habitual smoker from discrimination in employment. Moreover, the purpose behind the unemployment compensation law is to provide temporary income for those employees who become involuntarily unemployed due to reasons enumerated in the Law. Until such time as the legislature enacts laws to protect the rights of smokers, this Court will neither gratuitously confer any rights under the circumstances in the case sub judice nor allow unemployment compensation benefits to an employee who quits employment because smoking is banned within the employer's workplace.

conditions. Employer's office administrator testified that the offer and acceptance of employment was not conditioned upon the right to smoke. The only reference to this matter at the time of hire was Claimant's inquiry as to whether she would be allowed to smoke on the job, and the administrator replied that Claimant would be permitted to smoke. The record consequently falls far short of proving that Claimant conditioned her employment upon the ability to smoke on the job and that Employer accepted that condition.

 Assuming, however, that the testimony as a whole supports the Board's position, the claim must still be denied. Employers are always entitled to modify employment specifications with regard to time, place and manner, and the only restriction placed upon that privilege is the requirement that employers act reasonably and in good faith. *Monaco*. Modification of smoking privileges within Employer's premises is clearly consistent with employment specifications regarding the manner of job performance. Further, the implementation of a smoking ban in the workplace is unquestionably reasonable, particularly when motivated by anti-smoking legislation and a concern to promote a smoke-free working environment.

## III

Finally, Employer maintains that it has acted in compliance with recently enacted clean-air legislation commonly known as the Pennsylvania Clean Indoor Air Act.[5] The purpose of this legislation is to protect public health and to promote the comfort of all persons within public places, at public meetings and in certain workplaces by regulating and controlling smoking. Under the act, employers are required to develop, post and implement "a policy" to regulate smoking in the workplace. The act does not, however, require development of any particular type of policy so long as it is intended to regulate smoking in the workplace. That Em-

---

**5.** Section 10.1 of the Act of April 27, 1927, P.L. 465, *as amended*, added by Section 2 of the Act of December 21, 1988, P.L. 1315, 35 P.S. § 1230.1.

ployer acted pursuant to this law further militates against the Board's conclusion that Employer's smoking ban presented cause of a necessitous and compelling nature for Claimant's voluntary termination of her job.

Notwithstanding same, this Court has expressed some of those societal and/or cultural concerns raised in the ongoing debates about the dangers of cigarette smoking and stated in *Lapham v. Unemployment Compensation Board of Review,* 103 Pa.Commonwealth Ct. 144, 147, 519 A.2d 1101, 1102, *appeal denied,* 515 Pa. 611, 529 A.2d 1084 (1987) that:

> The evidence of the toxic nature of tobacco smoke and its injurious and deleterious effects on health is very strong, not only to the smokers, but also to the nonsmokers who are exposed to 'second hand' smoke.
>
> In *Shimp v. New Jersey Bell Telephone Company,* 145 N.J.Super. 516, 368 A.2d 408 (1976), the court took judicial notice of the toxic nature of cigarette smoke and its well known association with emphysema, lung cancer and heart disease, citing the Federal Cigarette Labeling and Advertising Act, P.L. 89–92, July 27, 1965, 79 Stat. 282, and the Surgeon General's report of 1972 entitled *The Health Consequences of Smoking.* Both recognized the dangerous nature of cigarette smoke and declared it a national policy to warn the public of its danger. The Surgeon General discouraged cigarette smoking. His reports indicate that the mere presence of cigarette smoke is an air pollutant and makes involuntary smokers of all who breathe the air.

Thus, the Board and this Court have recognized the dangers inherent in cigarette smoking which further buttresses Employer's efforts to promote clean air within its workplace. Consequently, for the reasons discussed in this opinion, the Board's order must be reversed.

### ORDER

AND NOW, this 8th day of April, 1992, the order of the Unemployment Compensation Board of Review is reversed and unemployment compensation benefits are denied.

DOYLE, Judge, dissenting.

With due respect to the majority's view, I believe the majority has inverted the burden of proof in this case and labors through an analysis for a solution from an erroneous premise.

Contrary to the view of the majority, the essential question here is whether, after an employer's substantial unilateral change in an employee's working conditions, the employer must offer a suitable alternative in the form of a reasonable accommodation to that employee. It is, of course, a basic principle of unemployment law that a "claimant can meet his burden of proving a necessitous and compelling reason for terminating his employment by showing that the employment conditions changed or that he was reasonably unaware of the unsuitable conditions when he accepted the employment." *Shingles v. Unemployment Compensation Board of Review*, 99 Pa.Commonwealth Ct. 417, 513 A.2d 575 (1986); *Naylon v. Unemployment Compensation Board of Review*, 83 Pa.Commonwealth Ct. 502, 477 A.2d 912 (1984). And, in this case, the Board made the specific finding that the law firm of Quinn, Gent, Buseck and Leemhuis, Inc. (Employer) did make a "substantial unilateral change in the claimant's working conditions which rendered her job unsuitable and presented her with a necessitous and compelling cause to resign." The Claimant, Margaret L. Sinclair, therefore, met her burden. At that juncture, the burden shifted to the Employer and as the Board further found, the Employer failed to meet its burden. In fact, the law firm never even attempted to show that it met that burden; it simply pontificated that from henceforth there would be no smoking anywhere in its building, without offering any reasons for the change.

The analysis must begin with the testimony of the Claimant and whether her testimony amounted to substantial evidence to support the finding of the Board that Employer's providing a separate room in which its employees could smoke *was a condition of employment.* The Claimant's

full testimony, without the excisions made by the majority, is as follows:

> QR: Why is a smoking band [sic] cause for you to leave your job?
>
> AC: Because at my age, I sure as hell am not going to go outside and smoke in the winter time in Erie. *And all I asked for was a designated area. When I was hired, I was a smoker and they knew it and I had an office where I could smoke* and even when the city put their band [sic] on, and they said that they were going to be no smoking, then, some of the other people who smoked, sort of gone on the bandwagon *and they finally gave us a smoking room. And that's all I requested when* ... when this smoking thing came up, just a designated area. Whether I smoked at my desk or not, it was irrelevant, because I could of, you know, smoked on my breaks or I can go outside and do it. (Emphasis added.)

Whether the Claimant's smoking was a condition of employment was bluntly contradicted by the Employer's witness; thus:

> AEL: Now, Mr ... Mr. McAndrew, just a few other questions. At the time, or were you the firm administrator at the time Peg Sinclair was hired?
>
> AEW1: Yes, I was.
>
> QEL: And was ... was there any condition of employment of Peg Sinclair?
>
> AEW1: No.

The transcript of testimony further reveals that, in concluding the referee's hearing, the Employer's counsel argued:

> AEL: The only legal argument that I would make, Mr. Referee, is that the evidence indicates that there was not a term or condition of employment made that Peg Sinclair ...
>
> AC: What makes you think that I ...
>
> QR: Do not interrupt, please.

AEL: *That it was not a condition of . . . of Peg's hire that she be permitted to smoke,* that the smoking policy was implemented that the employees were notified of that and Peg Sinclair voluntarily submitted her resignation immediately without even experiencing the policy or finding how it would affect her. *And I think that that's a voluntary quit without a necessitous and compelling reason for which benefits should be denied.*

QR: Very well. Ms. Sinclair, anything further before the record is closed?

AC: *Well, I refute that statement that, when I asked him in the beginning if I could smoke, the answer was yes. So, I took the job.* (Emphasis added.)

On the basis of such testimony, the Board made a credibility determination and made the specific finding:

4. The claimant, age 65, has been a habitual smoker all of her adult life *and before she accepted the above-mentioned job she established that she would be permitted to smoke on the employer's premises.* (Emphasis added.)

The Board then concluded in its discussion:

The Board agrees with the rationale of the Referee and takes notice of the fact that in recent years there has been a marked decline in the social and cultural acceptability of smoking and that it has become much more common for employers to place restrictions upon their employees right to smoke. Here, however, the employer has totally banned smoking on its premises and failed to make any reasonable accommodations for those employees who smoked. The employer provided no designated area within the building for the employees to smoke. (Emphasis deleted.) *As noted by the Referee, the employer here has not attempted to show that there are any unusual circumstances which prompted the smoking ban. Rather, it appears to be merely a matter of personal preference on the part of certain senior members of the management of the company. Under the*

*facts of this case, the Board holds that the smoking ban constituted a substantial unilateral change in the claimant's working conditions which rendered her job unsuitable and presented her with necessitous and compelling cause to resign.* Accordingly, she is deemed eligible for benefits under the provisions of Section 402(b) of the Law. (Emphasis added.)

Keeping in mind that our duty is "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving the party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists," *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977), I must conclude that the Claimant's evidence as quoted above is sufficient and substantial evidence to demonstrate a condition of employment. The fact that the Employer's witness testified to the contrary is, of course, of no moment as credibility matters are within the Board's province. *Bowman v. Unemployment Compensation Board of Review*, 49 Pa.Commonwealth Ct. 170, 410 A.2d 422 (1980).

Having established the existence of a condition of employment, the next inquiry is whether the change in that condition was reasonable and implemented in good faith. *See Monaco v. Unemployment Compensation Board of Review*, 523 Pa. 41, 565 A.2d 127 (1989). In light of the growing recognition in medical circles of the dangers of smoking to both smokers and those in their immediate presence, an employer's decision to curtail the locales where employees can smoke *may* be generally reasonable, *see Lapham v. Unemployment Compensation Board of Review*, 103 Pa.Commonwealth Ct. 144, 519 A.2d 1101, *petition for allowance of appeal denied*, 515 Pa. 611, 529 A.2d 1084 (1987); but, on the specific facts of this case, the curtailment implemented was not reasonable and the Board so found. Expecting employees, especially older ones, to venture outside in Erie, Pennsylvania during severe winter

weather in order to smoke is, in my view, unreasonable. No explanation was ever offered by the Employer regarding why it chose to eliminate the area smoking room. What *Monaco* allows is a reasonable change to be made, much like what *Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 451 A.2d 1353 (1982), a medical quit case, permits is a reasonable medical accommodation to be made. Here, the Employer made no accommodation whatsoever.

Finally, I would note that the majority relies for support on Section 10.1(g) of the Act of April 27, 1927, P.L. 465, *as amended,* 35 P.S. § 1230.1(g).[1] That provision pertinently provides:

> [E]mployers shall develop, post and implement a policy to regulate smoking in the workplace, provided that nothing in this section or any local law, rule or regulation shall be construed as to impair or diminish or otherwise affect any contractual agreement, collective bargaining agreement, collective bargaining rights or collective bargaining procedures. The employer shall provide a copy of the policy to any employe upon request.

While there was no assertion of the existence of a formal written contract agreement here, the Board found and the record supports the finding that the right to smoke somewhere on the premises was a condition of the Claimant's employment, in essence an unwritten contractual agreement. Accordingly, I therefore believe that the Clean Indoor Air Act, on the facts of this case, lends no support to the majority's position.

The referee and Board in their decisions wisely avoided injecting into the case personal or public policy considerations regarding the evils and adverse health considerations of smoking. Quinn, Gent, Buseck and Leemhuis, Inc. never offered as a reason for its no smoking policy health considerations generally nor the health concerns of its other

1. Section 10.1 was added by Section 2 of the Act of December 21, 1988, P.L. 1315. This amendment is often referred to as the Pennsylvania Clean Indoor Air Act.

employees, or even consideration for its nonsmoking clients. The only evidence offered by the Employer, through the testimony of the firm's administrator, was that demonstrating that the Employer merely informed the Claimant that the firm was not going to provide a smoking room in its new facility; that its executive committee had met and decided the issue; and that "it was not going to change the policy." The reason behind that decision might well have been its unwillingness to provide an employee "perk" because it would cost the firm money in its new accommodations.

The majority opinion (p. 150) in quoting from this Court's opinion in *Lapham,* references the New Jersey Superior Court [2] opinion of *Shimp v. New Jersey Bell Telephone Co.,* 145 N.J.Super. 516, 368 A.2d 408 (1976), wherein that court "took judicial notice of the toxic nature of cigarette smoke and its well-known association with emphysema, lung cancer and heart disease...." I note in passing that since *Shimp* was decided in 1976, the New Jersey Legislature has twice considered a smokers bill of rights providing that "No employer shall refuse to hire ... discharge from employment or take any adverse action against any employee with respect to compensation, terms, conditions or other privileges of employment because that person smokes or uses other tobacco products, unless the employer has a rational basis for doing so which is reasonably related to the employment...." Such broad determinations of public policy, of the deleterious effect of smoking on the one hand and an individual's right to smoke on the other, belong with the legislatures and with the administrative agencies that set policy, not with the courts.

I would, accordingly, affirm the Board and grant benefits to this Claimant.

McGINLEY, J., joins in this dissent.

---

2. The New Jersey Superior Court is a trial court, not an appellate court.