Carol A. **WIVELL**, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 26, 1996.
Decided March 19, 1996.

Zenford A. Mitchell, for Petitioner.

Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before COLINS, President Judge, PELLEGRINI, J., and LORD, Senior Judge.

COLINS, President Judge.

Carol A. Wivell (Wivell) petitions for review of the July 31, 1995 order of the Unemployment Compensation Board of Review (Board) reversing a referee's decision and denying her benefits.

Wivell was employed as a supportive housing associate by Residential Care Services, Inc. (Employer) for approximately two months, with her last date of work being April 18, 1995. Soon after being hired, Wivell began to complain of sore throats, headaches, and sinus problems that she attributed to cigarette smoke at her place of employment.

The record indicates that Wivell informed her supervisor of the foregoing physical ailments and that she believed they were caused by the clients' and staff's cigarette smoke. Wivell's job responsibilities included attending a bingo function where extensive smoking took place and working with two clients who smoked heavily. At Wivell's request, Employer no longer scheduled her for the bingo function or to work with the chain-smoking clients. Additionally, Wivell expressed problems with attending weekly staff meetings because of smoking by both her supervisor and co-employees.

Wivell's physical complaints continued and she consulted a physician who treated her with a prescription medication. Employer maintained a non-smoking facility, but before Wivell could be transferred there for medical reasons, Employer required her to obtain a physician's note addressing her smoke-related health problems. Pending Employer's receipt of such a note, Wivell was reassigned to her original duties and clients. The record further indicates that although Wivell asked her physician for the note, she was told the doctor would feel uncomfortable providing it because he did not have a record of Wivell's recurring problems. Wivell, who had worked two of the three months necessary before obtaining health insurance through Employer, indicated she believed she would have to undergo numerous, costly allergy tests in order to obtain the required note. There is no indication in the record, however, that Wivell's physician told her that allergy testing was required to substantiate her smoke-related medical complaints.

According to the findings of fact, Wivell informed Employer that her doctor felt uncomfortable about providing the note, but did not advise Employer that she could not afford to see a physician, but rather that she was unable to get an appointment without having health insurance. Wivell grew increasingly dissatisfied with her working conditions and with Employer's requirement that she provide the medical note prior to obtaining a transfer, and she voluntarily quit her job.

The Job Center issued a determination granting Wivell benefits, from which decision Employer appealed. After a hearing at which Wivell and an Employer representative appeared and testified, the referee rendered a decision affirming the Job Center's determination. Employer appealed to the Board, which on July 31, 1995, reversed the referee's decision and denied benefits on the basis that Wivell had not established a necessitous and compelling reason to quit her job,

pursuant to Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).[1]  This petition for review followed.

■  Our scope of review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or essential facts are not supported by substantial evidence.  *Lee Hospital v. Unemployment Compensation Board of Review,* 161 Pa.Cmwlth. 464, 637 A.2d 695 (1994).

■  On appeal, Wivell argues that the Board erred in reversing the referee and that she did present reasons of a necessitous and compelling nature for leaving her job. In this regard, Wivell contends that the Board impermissibly held her to a higher than customary standard in finding Employer's requirement that she produce a physician's note to be reasonable.  Relying on *Judd v. Unemployment Compensation Board of Review,* 91 Pa.Cmwlth. 372, 496 A.2d 1377, 1379 (1985), Wivell contends that a claimant need not necessarily "present expert medical evidence in order to establish . . . compelling medical reasons for terminating . . . employment, but instead may establish that fact by any competent evidence such as claimant's own testimony and/or documentary evidence."  Finally, Wivell maintains that once she informed Employer about her smoke-related health problems as interfering with her regularly assigned duties, the burden of proof was no longer hers.  *Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982).

■  The problematic issue of voluntary quit was addressed in *Lechner v. Unemployment Compensation Board of Review,* 163 Pa.Cmwlth. 111, 639 A.2d 1317 (1994), which set forth the following guidelines:

> A claimant who voluntarily quits a job bears the burden of proving that the termination was caused by reasons of a necessitous and compelling nature.  *Quinn, Gent, Buseck & Leemhuis, Inc. v. Unem-*

*ployment Compensation Board of Review,* 147 Pa.Commonwealth Ct. 141, 606 A.2d 1300 (1992); . . . .  Whether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law based upon the underlying findings of fact and is reviewable by this Court.

*Id.,* 639 A.2d at 1319.  With regard to the present case, in determining whether the Board erred in finding that Wivell failed to meet the burden of proving necessitous and compelling reasons for leaving her job with Employer, we recognize that

> [t]o meet that burden, a claimant must show that cause of a necessitous and compelling nature results from circumstances which produce pressure, both real and substantial, to terminate one's employment and which would compel a reasonable person under the circumstances to act in the same manner. . . .  Further, this Court must also evaluate Claimant's behavior to decide whether she acted reasonably under the circumstances.

*Quinn, Gent, Buseck and Leemhuis, Inc. v. Unemployment Compensation Board of Review,* 147 Pa.Cmwlth. 141, 606 A.2d 1300, 1302 (1992).  Applying the foregoing parameters to the case *sub judice,* we find that Wivell acted impulsively, rather than reasonably, in voluntarily quitting her job with only one more month to work before obtaining health insurance through Employer.

In addition to her failure to act in a reasonable manner, Wivell did not adequately meet the burden of establishing that medical problems created a necessitous and compelling reason for her to leave her job.

> To establish health problems as a compelling reason to quit, the claimant must (1) offer competent testimony that adequate health reasons existed to justify the voluntary termination, (2) have informed the employer of the health problems and (3) be available to work if reasonable accommodations can be made. . . .  Failure to meet any one of these conditions bars a claim for unemployment compensation.

---

1.  Section 402(b) of the Law provides that an employee shall be ineligible for benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . ."  43 P.S. § 802(b).

*Lee,* 637 A.2d at 698. Evidence of record indicates that Wivell complied with the second and third of the foregoing requirements by telling Employer about her smoke-related ailments (failing however to explain her financial limitations with respect to allergy testing) and by indicating availability to work in Employer's smoke-free facility. However, as to the first required element, that of presenting competent testimony that adequate health reasons existed to justify the voluntary termination, we concur with the Board's conclusion that although Wivell's sole testimony may have established the existence of her alleged medical problems, it was insufficient to establish that they were the direct result of cigarette smoke at Employer's workplace. Therefore, Employer, as part of its attempt to accommodate Wivell's requested transfer to its smoke-free facility, was not unreasonable in requesting that Wivell submit a physician's note corroborating her alleged smoke-induced complaints.

Wivell's leaving her job peremptorily, only one month before becoming eligible for health insurance, rather than allowing Employer, who did not oppose Wivell's transfer pending receipt of medical verification, an opportunity to work out her difficulties, cannot be deemed conduct a reasonable person would have taken in the same circumstances. We therefore do not find that this record supports Wivell's averments of a necessitous and compelling cause to terminate her employment.

Finally, an interesting, if ironic, variation on the present fact pattern presented itself in *Quinn,* wherein a claimant who voluntarily quit because of her Employer's ban on smoking was found not to have established cause of a necessitous and compelling nature to terminate her employment and was therefore denied benefits. This Court therein noted that

> [t]he law is quite clear that an employee is obligated to take all reasonable and necessary steps to preserve his or her employment and that failing to do so, a claim for unemployment compensation benefits upon voluntary termination of that employment must be rejected.... Also, an employee may not voluntarily terminate employment

merely because of disagreement with an employer's policy or dissatisfaction with working conditions.

*Quinn,* 606 A.2d at 1303. Unarguably, the present record indicates that Wivell failed to take all reasonable and necessary steps to preserve her employment.

Based on the foregoing discussion, the order of the Board is affirmed.

### *ORDER*

**AND NOW,** this 19th day of March, 1996, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.