# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Randy Lee Hohl, :
                Petitioner :
                 :
      v. : No. 478 C.D. 2020
                 : Submitted: February 26, 2021
Unemployment Compensation :
Board of Review, :
             Respondent :


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY PRESIDENT JUDGE BROBSON           FILED: September 22, 2021


Petitioner Randy Lee Hohl (Claimant) petitions, *pro se*, for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed a decision by a Referee, denying benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] We now vacate the Board's order and remand the matter to the Board.

Claimant was employed by Roeberg Enterprises Inc. (Employer) as a Deka Route/Industrial Driver until his separation from employment in November of 2019. (Certified Record (C.R.) 8-11, 13, 63.) Claimant applied for unemployment benefits on November 24, 2019, stating in his application that he quit because he was verbally threatened by a coworker while at work, and Employer had not resolved the issue

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

despite its assurance to the contrary. (*Id*. at 8-11.) The Scranton UC Service Center (Service Center) concluded that Claimant was ineligible for benefits because he did not have a necessitous and compelling reason for voluntarily quitting his employment and because he did not exhaust all available alternatives before quitting. (*Id*. at 37.) Claimant appealed the Service Center's decision, and a Referee conducted a hearing at which Claimant appeared and testified. (*Id.* at 42, 53, 60-72.) Employer was not present at the hearing.

Claimant testified that he worked for Employer as an industrial driver beginning in January 2019 until his last day on November 8, 2019. (C.R. at 62-63.) When asked about the circumstances surrounding his separation from employment, Claimant stated that he "pretty much resigned" because he was "verbally threatened to be beaten up at work" by a coworker. (*Id.* at 63-64.) Claimant explained that Employer is in the garment care and cleaning business, and, as part of his duties, he is responsible for folding and bagging clean towels and transporting them back to clients. (*Id.* at 64.) This required Claimant to interact with coworkers known as "washers," who laundered items and who worked a couple hundred feet away from him. (*Id.* at 64, 69.) The incident in question involved an interaction between Claimant and a washer coworker. Claimant testified:

> Actually[,] I have to interact with the [w]ashers daily all day long, when I'm there I interact with them, you know, how many more towels do you have, are they in the washer, are they coming down soon, you know, pretty much that type of deal. So[,] there's no way I could not avoid them, my job pertained to interacting with them daily all day long. And then I just said to him -- I don't know if he was having a bad day, I said do you have any more towels[,] and he goes if you don't shut the F up I'm going to knock you the F out, one more word you say to me.

2

(*Id.* at 65.) Claimant stated that he walked away and avoided his coworker for the rest of the day. (*Id.*) Claimant immediately reported the incident to Employer's owners, who told him that "the situation was going to be handled [the following] Monday morning[;] it was going to be resolved." (*Id*. at 66.) Claimant interpreted this statement to mean that Employer would fire the coworker, but when Claimant returned to work the following Monday, the coworker had not been fired. (*Id.* at 66-67.) That week, Claimant again went to Employer's owners, explaining that the coworker and the other washer employees would not talk to him. (*Id.* at 67-68.) Claimant testified that Employer's owners acknowledged that there were issues with the washers, but they still did not terminate the employment of the coworker in question. (*See id.*) Claimant, thus, was "worr[ied] about getting physically beaten and attacked at work," which ultimately caused him to quit at the end of the week on November 8, 2019. (*See id.* at 67.) The Referee further pressed Claimant as to whether he could have moved to a different work area to avoid interacting with the coworker, but Claimant responded that he "knew for a fact" that there were no other available positions for him, except for at one of Employer's retail locations. (*Id.* at 71.) Claimant did not ask to work in a retail location. (*Id.*) After quitting, however, Claimant did apologize to Employer and asked for his job back, but he did not receive a response. (*Id.*)

The Referee issued a decision on January 17, 2020, affirming the Service Center's determination and denying benefits. (C.R. at 74-78.) In so doing, the Referee made the following findings of fact:

1. [C]laimant worked for [Employer] from January 2019, until November 8, 2019, as a full-time industrial driver.
2. [E]mployer's principal business activity is to provide cleaning services.

3. [C]laimant worked for [E]mployer in a large factory setting and spent part of his work time performing delivery work.

4. [C]laimant alleges that approximately one week prior to the separation, he asked a coworker if he had any towels, and the coworker responded by saying, "If you don't shut the [f]u** up, I'm going to knock you out."

5. [C]laimant discussed this alleged statement with [E]mployer['s] management, and then continued to work for [E]mployer for an additional week without any other incidents occurring with the coworker.

6. [E]mployer has multiple work locations.

7. Prior to the separation, [C]laimant did not discuss with [E]mployer['s] management the possibility of working in a different section of the factory or transferring to a different work location.

8. [C]laimant quit the job on November 8, 2019.

(*Id*. at 74-75.)

The Referee concluded that Claimant failed to prove that he had a necessitous and compelling reason for leaving his employment, reasoning:

*Here, the Referee did not find [C]laimant's testimony to be credible that [C]laimant did not in any way provoke the coworker and that the coworker told [C]laimant he was going to knock him out in response to [C]laimant simply asking the coworker if he had any towels. As such, [C]laimant did not establish a necessitous and compelling reason for the separation as a result of this alleged statement,* which was the only reason provided by [C]laimant for the separation. Moreover, [C]laimant testified that he brought the issue to the attention of [E]mployer['s] management and alleges management took no action; however, [C]laimant testified that he continued to work in the presence of the coworker for a week after the alleged incident with no other incidents occurring with the coworker, which would indicate this issue was addressed with the coworker. *Lastly, [C]laimant testified that he made no inquiry with [E]mployer to work in a different section of the warehouse or to work at a different [E]mployer location despite [E]mployer having multiple work locations. As such, [C]laimant did not make a reasonable attempt to preserve the employment.* For these reasons, [C]laimant has not met his burden of proof under Section 402(b) of the Law; therefore, benefits are denied.

(*Id.* at 75-76 (emphasis added).)

4

Claimant appealed to the Board. By decision and order dated March 4, 2020, the Board adopted the Referee's findings of fact and conclusions of law and affirmed the Referee's decision. (C.R. at 86.) Although the Board recognized that Claimant may have been physically threatened, the Board, nevertheless, concluded that Claimant failed to "sustain his burden to prove that he acted with ordinary common sense and took reasonable measures to preserve the employment relationship."[2] (*Id.*) Claimant now petitions this Court for review.

On appeal,[3] Claimant contends that the Board erred as a matter of law in concluding that he failed to establish cause of a necessitous and compelling nature to voluntarily quit his employment. In furtherance thereof, Claimant argues that he should not have been required to exhaust available alternatives to preserve his employment relationship. Rather, Claimant asserts that he did everything he felt he needed to, but that Employer was at fault for failing to take the proper steps to terminate the coworker's employment. Throughout his brief, Claimant reiterates that his rights were violated and that he should not be required to prove that he explored all pathways when he did nothing but "show up to work and do [his] job." (Claimant's Br. at 4.) In response, the Board contends that Claimant was not credible *in testifying that his coworker physically threatened him*, and, therefore, the Board

_____

[2] On March 10, 2020, Claimant petitioned the Board for reconsideration of its decision. (C.R. at 94-111.) The Board acknowledged receipt of Claimant's petition. (*Id.* at 113.) His petition was deemed denied when the Board failed to rule on it within the applicable timeframe. *See* Section 35.241(d), (e) of the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 35.241(d), (e).

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704. "Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion." *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013).

5

did not err in concluding that Claimant did not have cause of a necessitous and compelling nature to voluntarily quit his employment.

Under Section 402(b) of the Law, an employee is ineligible for unemployment benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Wasko v. Unemployment Comp. Bd. of Rev.*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985). A claimant who voluntarily quits his employment "bears the burden of proving that necessitous and compelling reasons motivated that decision." *Fitzgerald v. Unemployment Comp. Bd. of Rev.*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999).

In order for a claimant to establish cause of a necessitous and compelling nature, he must show: (1) the existence of circumstances that created real and substantial pressure to leave employment; (2) that such circumstances would compel a reasonable person to leave employment; (3) that he acted with ordinary common sense; and (4) that he made a reasonable attempt to continue his employment. *Comitalo v. Unemployment Comp. Bd. of Rev.*, 737 A.2d 342, 344 (Pa. Cmwlth. 1999). Where the claimant has failed to take all necessary and reasonable steps to preserve the employment relationship, he cannot demonstrate a necessitous and compelling reason for leaving his job and is ineligible for benefits. *PECO Energy Co. v. Unemployment Comp. Bd. of Rev.*, 682 A.2d 58, 61 (Pa. Cmwlth. 1996). "Each [situation] must be examined on an individual basis to understand the exigencies the claimant faced at the time [he] decided to separate from employment." *Kelly v. Unemployment Comp. Bd. of Rev.*, 172 A.3d 718, 723 (Pa. Cmwlth. 2017), *appeal denied*, 184 A.3d 547 (Pa. 2018).

6

Threats of violence and fear for one's safety may constitute necessitous and compelling circumstances for quitting employment. *See Kama Corp. v. Unemployment Comp. Bd. of Rev.*, 410 A.2d 974 (Pa. Cmwlth. 1980) (affirming grant of benefits to claimant who quit after two union members told him they would break his knees if he returned to work and had his car vandalized); *see also Howell v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 718 (Pa. Cmwlth. 1985) (reversing denial of benefits when claimant quit over being struck in face by another employee and, after employee was terminated, employee returned to workplace and again struck claimant in face). As we explained in *Scott v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 637 C.D. 2014, filed November 7, 2014):[4]

> Concern for personal safety, including fear of physical attacks by co[]workers, can constitute necessitous and compelling reasons for leaving employment.[5] The mere fact that the claimant is subjectively afraid, however, is not sufficient; the safety risk must be objectively real to constitute a sufficient reason for resigning from one's job.[6]
>
> Moreover, even where the safety concern is real and serious, the claimant must show that he made a reasonable attempt to seek protection from the danger and that the employer's response gave him no choice but to leave his employment.[7] If the employer has offered alternative work arrangements that could solve the safety issue, quitting without even attempting to work under those arrangements does not constitute a reasonable attempt to preserve employment and bars the claimant from benefits.[8] "If the employer promises to take action to

---

[4] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent." We cite *Scott* here because its summary of this Court's case law is extremely pertinent to the matter now before this Court.

[5] *Green Tree Sch. v. Unemployment Comp. Bd. of Rev.*, 982 A.2d 573, 577 (Pa. Cmwlth. 2009).

[6] *Green Tree Sch.*, 982 A.2d at 578.

[7] *Iaconelli v. Unemployment Comp. Bd. of Rev.*, 423 A.2d 754, 756 (Pa. Cmwlth. 1980).

[8] *Iaconelli*, 423 A.2d at 756-57.

alleviate the problem, good faith requires that the employee continue working until or unless the employer's action proves ineffectual." *Craighead-Jenkins* [*v. Unemployment Comp. Bd. of Rev.*], 796 A.2d [1031,] 1034 [Pa. Cmwlth. 2002].

*Scott*, slip op. at 5-6 (some citations omitted).

Presently, what should be a straight-forward analysis is complicated by the lack of clarity as to the basis for the Board's decision. At the outset we note that the Referee failed to articulate clearly a crucial finding regarding the alleged physical threat—*i.e.*, whether it occurred. Instead, the Referee, as part of his credibility determination, explains that he "did not find [C]laimant's testimony to be credible that [C]laimant did not in any way provoke the co[]worker and that the coworker told [C]laimant he was going to knock him out in response to [C]laimant simply asking the coworker if he had any towels." (C.R. at 75.) From this finding, it is unclear to this Court whether the Referee intended to convey that (1) the Referee found that the coworker did not threaten Claimant with physical violence, or (2) the Referee found that the coworker threatened physical violence but that Claimant provoked the threat. The sentence following the "finding" does not provide any clarification, as the Referee merely concluded that "[C]laimant did not establish a necessitous and compelling reason for the separation as a result of this alleged statement, which was the only reason provided by [C]laimant for the separation." The Referee did not provide any further explanation as to the alleged physical threat and whether Claimant may have provoked it.[9] On appeal, the Board did not provide

---

[9] It is also unclear as to what significance, if any, the Referee placed on whether Claimant may have provoked the threat. Indeed, the issue of provocation has arisen in the unemployment matters in the context of willful misconduct termination, but not as it relates to cause of a necessitous and compelling nature to quit under Section 402(b) of the Law. *See Nehi Bottling Co. v. Unemployment Comp. Bd. of Rev.*, 366 A.2d 594 (Pa. Cmwlth. 1976) (holding that claimant's threat of physical harm to another employee was not willful misconduct under Section 402(e) because threat was provoked); *Allen v. Unemployment Comp. Bd. of Rev.*, 638 A.2d 448

8

any clarification either; rather, the Board adopted the Referee's findings and conclusions and held: "[C]laimant *asserts* that he had just cause to voluntarily leave due to being physically threatened. However, [C]laimant did not sustain his burden to prove that he acted with ordinary common sense and took reasonable measures to preserve the employment relationship." (*Id.* at 86 (emphasis added).)

Consequently, we cannot now ascertain for purposes of appellate review whether the Board was agreeing with the Referee either that (1) Claimant was not credible in testifying that his coworker threatened him with physical violence, or (2) Claimant was not credible in testifying that he did not provoke the threat. Furthermore, although the Board acknowledged that Claimant asserted that he faced a physical threat of violence from his coworker, the Board nonetheless, in agreement with the Referee's determination on the issue, concluded that Claimant's failure to preserve his employment relationship was dispositive of this matter. The Referee had based his reasoning on the fact that Claimant "made no inquiry with [E]mployer to work in a different section of the warehouse or to work at a different [E]mployer location." (C.R. at 75.) While we have held that, in order to make a reasonable attempt to preserve his employment in a situation where an employer offers alternative work arrangements in response to a report of a physical threat, an employee must attempt the alternative work arrangement, *see Scott*, slip op. at 5-6, we have not required an employee *to request* an alternative work arrangement in the face of a physical threat. In *Comitalo*, we held that, "[u]ltimately[,] [an] employer bears the responsibility for eliminating harassment against employees in the workplace," recognizing that "there is a certain level of conduct that an employee

_____

(Pa. Cmwlth. 1994) (finding that vulgar language to superior constituted willful misconduct under Section 402(e) because there was no justifiable provocation).

9

will not be required to tolerate and that the Court will not place all responsibility upon an employee to resolve his . . . work dilemma." *Comitalo*, 737 A.2d at 345. We believe an employer bears a similar level of responsibility in the face of threats of physical violence. Here, there is no record evidence that Employer offered Claimant an alternative work arrangement that Claimant rejected.

Accordingly, we will vacate the Board's decision and remand the matter to the Board for the issuance of a new decision that allows for effective appellate review and applies the correct legal standards. Specifically, the Board should make factual findings relative to Claimant's stated reason for quitting and apply the appropriate legal standard for determining whether Claimant, given the fact finding, had a necessitous and compelling reason to quit.

_____
P. KEVIN BROBSON, President Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Randy Lee Hohl,                        :
                        Petitioner      :
                                       :
        v.                             :    No. 478 C.D. 2020
                                       :
Unemployment Compensation              :
Board of Review,                       :
                        Respondent      :

# **O R D E R**


AND NOW, this 22nd day of September, 2021, the order of the Unemployment Compensation Board of Review (Board) is hereby VACATED, and this matter is REMANDED to the Board for the issuance of a new decision consistent with this opinion.

Jurisdiction relinquished.


_____
P. KEVIN BROBSON, President Judge